**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

IRDI MOTA-RODRIGUEZ,

*Petitioner*,

v.

WARDEN, F.C.I. FORT DIX,

*Respondent*.

Civil Action No. 2:25-15907

**MEMORANDUM ORDER**

August 14, 2026

**THIS MATTER** comes before the Court upon the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"), of Petitioner Irdi Mota-Rodriguez ("Petitioner"), a federal prisoner confined at Fort Dix Federal Correctional Institution. (ECF No. 1.) The filing fee has been paid. The Court screens the Petition pursuant to Rule 4 of the Rules Governing § 2254 Cases, applicable to § 2241 petitions. *See* 28 U.S.C. § 2243; *Massey v. United States*, 581 F.3d 172, 174 (3d Cir. 2009).

## I. BACKGROUND AND PROCEDURAL HISTORY

Petitioner is serving an 87-month federal sentence imposed on February 25, 2022, by the United States District Court for the Middle District of Florida. (ECF No. 1 at 6.) He challenges the execution of his sentence by the Bureau of Prisons ("BOP"), specifically the BOP's denial of First Step Act ("FSA") Time Credits ("FTCs") based on his placement in "GED UNSAT" status — a BOP administrative designation reflecting that an inmate is not making satisfactory progress toward earning a General Educational Diploma ("GED"). (*Id.* at 1.)

According to the Petition, in 2024, while housed at LSCI Allenwood, BOP Education Department staff informed Petitioner that, as a deportable immigrant, he was exempt from GED program participation and directed him to stop attending class. (*Id.*) Petitioner alleges he complied with those instructions and thereafter had no further interaction with Education Department staff, was never sanctioned, and was never informed of any consequences flowing from the change in his enrollment status. (*Id.*) He was not told he had been placed in GED UNSAT status, nor was he advised that the designation would affect his sentence credits or release date. (*Id.*)

Petitioner alleges that after his transfer to Fort Dix Federal Correctional Institution ("FDFCI"), Petitioner learned for the first time that his GED UNSAT status had rendered him ineligible to earn FSA time credits and had reduced his Good Conduct Time ("GCT") from 54 days per year to 42 days per year. (*Id.* at 2, 4.) He expressed confusion to FDFCI Education Department staff and indicated that he wished to continue GED classes, explaining that he had stopped attending at LSCI Allenwood only because he was instructed to do so. (*Id.* at 2.) FDFCI Education staff told Petitioner that placement on the GED waiting list would preserve his FSA eligibility and that he would be enrolled in a GED class as soon as possible; both representations proved incorrect. (*Id.*) FDFCI Unit Team members subsequently informed Petitioner that he was in FSA "Opt Out" status due to his GED UNSAT designation and stated that nothing could be done because the designation had originated at LSCI Allenwood. (*Id.*) Despite Petitioner's repeated requests — including formal written Requests to Staff, conversations with successive FDFCI Literacy Coordinators, administrative remedies filings, and on one occasion physically attending GED class on his own initiative — he has not been enrolled in GED class. (*Id.* at 3–4.)

Petitioner further alleges he pursued administrative remedies at FDFCI. His BP-8 and BP-9[1] were denied on the basis that the GED UNSAT designation had been imposed at LSCI Allenwood. (*Id.* at 2.) The FDFCI Warden's BP-9 response characterized Petitioner's removal from the GED program as voluntary, asserting that an LSCI Allenwood staff member had counseled him about the consequences before he "signed out" of the program. (*Id.*) Petitioner disputes that characterization and alleges he never had any such conversation, was never provided any such information, and never signed out of any class. (*Id.*) Petitioner timely submitted a BP-10[2] Regional Appeal to the Northeast Regional Office ("Regional Office"); the Regional Office denied it as untimely approximately two months later, on the basis that the form had arrived three weeks late. (*Id.* at 3.) Petitioner reinitiated the process; after the Regional Office initially refused a second BP-10 as untimely, his Unit Counselor provided a good-faith untimeliness exemption, and Petitioner resubmitted. (*Id.*) The Regional Office has neither responded nor requested an extension, placing it in default of the BOP's own administrative remedies regulations. (*Id.*) Petitioner contends that this non-response renders the administrative remedy process unavailable and excuses further exhaustion. (*Id.*)

The cumulative effect of the GED UNSAT designation, Petitioner contends, has extended his release date by approximately one and a half years relative to what it would be if his FTC's

---

[1] The BOP maintains a multi-tiered Administrative Remedy Program through which inmates may seek formal review of issues relating to their confinement. The process ordinarily begins with an inmate's attempt at informal resolution, commonly referred to as a BP-8, in which the inmate presents the issue to institutional staff before filing a formal grievance. If informal resolution is unsuccessful, the inmate may submit a BP-9, which is the formal Administrative Remedy Request to the Warden.

[2] If dissatisfied with the Warden's response, the inmate may appeal by filing a BP-10 with the appropriate Regional Director and, thereafter, a BP-11 with the BOP's Office of General Counsel. Exhaustion of these administrative remedy levels generally constitutes full exhaustion of the Bureau's Administrative Remedy Program.

were restored, his lost GCT were recalculated, and he were permitted to re-earn FTC's going forward. (*Id.* at 4.) Petitioner notes that he has a low Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") [3] score, and that his offense of conviction is FSA/FTC-eligible. (*Id.*)

## II. <u>LEGAL STANDARD</u>

Under Rule 4, the Court must promptly examine the petition and dismiss it "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." A § 2241 petition is the appropriate vehicle for a federal prisoner challenging the execution of his sentence, including the BOP's administration of FSA credits. *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241–44 (3d Cir. 2005).

## III. <u>DISCUSSION</u>

Petitioner raises a cognizable due process claim under the Fifth Amendment. A federal prisoner possesses a liberty interest in FSA time credits and good conduct time where their application has a direct and concrete effect on the length of confinement. *See Wolff v. McDonnell*, 418 U.S. 539, 556–57 (1974) (recognizing liberty interest in good time credits). The BOP's own program statements require that inmates be counseled about the consequences of GED UNSAT status — including loss of GCT and FSA time credits — before such a designation is imposed. (ECF No. 1 at 4.) Petitioner alleges that no such counseling occurred; that he was instead directed by staff to cease attending class without any notice that doing so would trigger an adverse administrative designation materially affecting his sentence. (*Id.* at 1, 5.) These allegations, taken

[3] The PATTERN is the risk assessment instrument developed by the BOP pursuant to the First Step Act of 2018. PATTERN evaluates an inmate's risk of recidivism using a combination of static factors (such as criminal history and age) and dynamic factors (such as institutional conduct and program participation), assigning the inmate to one of four risk categories: minimum, low, medium, or high. The BOP uses an inmate's PATTERN score, among other considerations, to assess eligibility for certain FSA earned time credit benefits and programming opportunities.

as true, describe a concrete deprivation of liberty interests — a projected 18-month extension of imprisonment — arising from a procedurally deficient administrative action taken without notice or opportunity to be heard. The Court finds that these allegations are sufficient to require a response and are not plainly without merit.

The Court is also satisfied that the exhaustion question is sufficiently developed to proceed. Whether the Regional Office's failure to timely respond renders administrative remedies "unavailable" within the meaning of applicable BOP regulations and governing precedent is a question best addressed on a full record. *See Ross v. Blake*, 578 U.S. 632 (2016) (holding that a prisoner need not exhaust administrative remedies that are, as a practical matter, unavailable). Accordingly,

**IT IS** on this **14th** day of **August 2026**,

1. **ORDERED** that the Clerk shall serve a copy of this Memorandum Order, together with a copy of the Petition (ECF No. 1), upon the United States Attorney for the District of New Jersey; and it is further

2. **ORDERED** that Respondent shall file an answer, motion to dismiss, or other response to the Petition (ECF No. 1) within forty-five (45) days of the date of this Order; and it is further

3. **ORDERED** that Petitioner may file a reply within thirty (30) days of service of Respondent's response, and it is further

4. **ORDERED** that the Clerk shall send a copy of this Memorandum Order to Petitioner at the address indicated on the docket.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**